## NATIONAL TANK & EXPORT CO. v. UNITED STATES.

District Court, S. D. Georgia, Savannah Division. June 29, 1929.

Lawrence & Abrahams, of Savannah, Ga., for plaintiff.

Chas. L. Redding, U. S. Atty., and George Noble Jones, Asst. U. S. Atty., both of Savannah, Ga., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. S. Scott, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C.

### Findings of Fact.

BARRETT, District Judge. The court finds that the following facts have been established satisfactorily:

1. Plaintiff is a corporation, organized in 1901, existing under the laws of the state of Georgia, with its principal office at 804 Liberty Bank & Trust Building, in Savannah, Ga.

2. On or about March 14, 1919, plaintiff caused to be filed with A. O. Blalock, Collector of Internal Revenue at Atlanta, Ga., on form 1031 T of the United States Internal Revenue Service, a tentative return and estimate of corporation income and profits taxes, and request for extension of time of 45 days for filing a completed return for the year ended December 31, 1918. Said tentative return showed an estimated tax due of $14,000, and the same was accompanied by plaintiff's check upon the Citizens & Southern Bank, Savannah, Ga., in the sum of $3,500, payable to said collector, to cover one-fourth of said estimated tax, which check was retained by said collector and collected by him through the Federal Reserve Bank of Atlanta on March 18, 1919.

3. On or before May 1, 1919, plaintiff in conjunction with American Naval Stores Company, a corporation existing under the laws of the state of West Virginia, with its principal office and place of business at Savannah, Ga., pursuant to the approval by said collector of its request as aforesaid, filed with him on form 1120 of the United States

Internal Revenue Service a completed corporation income and profits tax return for the calendar year 1918 showing no taxable net income and no tax due, this return having been headed "American Naval Stores Company and National Tank & Export Company, Savannah, Georgia." Upon said return was printed a list of questions, among which was the following: "Is this return a consolidated return within the meaning of Articles 631 to 638, inclusive, of Regulations 45?" And the answer thereto made by plaintiff and said American Naval Stores Company was "Yes."

4. During the entire year 1918 and first four months of 1919 American Naval Stores Company owned approximately 73 per cent. of plaintiff's outstanding capital stock, consisting of 360 shares of the par value of $100 each, having full and equal voting powers.

5. Said American Naval Stores Company was a large dealer in turpentine, the commodity stored in plaintiff's storage tanks, owning large tracts of timberlands, distilling plants, tank cars, naval stores yards, and other facilities necessary in the general conduct of a naval stores business, including a tank storage company which competed with plaintiff, and had numerous branch offices in this country and abroad. It was a dominant company in the trade and was prosecuted by the United States government for violation of the Sherman Anti-Trust Act (15 USCA § 1 et seq.). Through its ownership of the capital stock of plaintiff as above set forth it named a majority of plaintiff's board of directors, and this board controlled all of the policies and business of plaintiff. By reason thereof, and also of said American Naval Stores Company's ownership of a competing plant and its commanding position as the largest buyer and distributor of turpentine in the world, it was able to fix or alter the charges for storage made by plaintiff and utilize plaintiff's plant and facilities almost at will, as might be most advantageous and profitable to said American Naval Stores Company. Said company kept its books of account upon a calendar year basis.

6. In filing the said consolidated return for 1918, plaintiff, through its duly constituted officers, acted in good faith, without any intent to defraud the government.

7. Thereafter the Commissioner of Internal Revenue made a ruling to the effect that the American Naval Stores Company and plaintiff were not affiliated corporations under the law and were not entitled to make consolidated returns, and advised plaintiff that it should file separate income and profits tax returns. Plaintiff kept its books up-

on the basis of fiscal years ending April 30th; and in accordance with the Treasury regulations and the foregoing ruling submitted to the Commissioner in Washington on or about September 28, 1922 such separate returns covering the four months ended April 30, 1918 (its returns for 1917 and prior years having been upon a calendar year basis in conformity with laws and regulations then in force) and for the 12 months ended April 30, 1919. At the time these amended returns were submitted to the Commissioner plaintiff contended, and has at all times since contended, that the original consolidated return filed was proper; and the Commissioner heard protests and arguments with reference thereto from time to time for a period of more than three years thereafter.

8. The Commissioner of Internal Revenue, by letter dated December 29, 1924, notified plaintiff that he had made a so-called jeopardy assessment, under section 274(d) of the Revenue Act of 1924 (26 USCA § 1051 note), of a deficiency of $11,096.70 covering tax upon plaintiff's income for the fiscal year ended April 30, 1919, and such assessment was actually included in the January, 1925, list signed by the Commissioner of Internal Revenue and sent by him to the Collector of Internal Revenue at Atlanta, Ga. Notice and demand for payment thereof was mailed to plaintiff by J. T. Rose, Collector of Internal Revenue at Atlanta, Ga., on January 6, 1925. Claim in abatement of this tax was mailed by plaintiff to said collector in due course, and, upon receipt of same said collector by letter dated January 16, 1925, demanded a bond of $14,000 to support said claim, to which plaintiff replied by letter dated January 19, 1925, stating the impossibility of furnishing said bond.

9. No assessment of the deficiency claimed by the Commissioner of Internal Revenue to be due as aforesaid was made prior to December 29, 1924, nor were any distraint proceedings instituted or suit in court begun for the collection thereof, other than as herein stated. Plaintiff has not at any time entered into any agreement or consent with the Commissioner of Internal Revenue or any of his representatives, in writing or otherwise, nor executed any waiver, extending the period within which determination, assessment, or collection might lawfully be made; nor did said Commissioner prior to making said jeopardy assessment send to plaintiff by registered mail or otherwise any deficiency letter or letters relating to the calendar year 1918, or the fiscal year ended April 30, 1919, or any other fiscal year par-

tially embraced in the year 1918, which would in any way have served to arrest the running of said statutory period of limitations; nor did the Commissioner before March 3, 1924, find any additional tax to be due by plaintiff by reason of a redetermination of its income because of an excessive deduction for amortization of war facilities, as provided in section 234(a) (8) of the Revenue Act of 1921 (42 Stat. 255); nor did the Commissioner tentatively allow any losses or other deductions for said year 1918 or any portion thereof pending a determination of the exact amount deductible.

10. On April 1, 1925, said collector, without the consent of plaintiff, applied a balance of $3,386.66, due it for an overpayment of tax for the year 1917, against said deficiency of $11,096.70 asserted for the fiscal year ended April 30, 1919.

11. At various times during the month of March, 1925, said collector, through his deputy or deputies, filed notice of lien against the property of plaintiff in Chatham county, Ga., and also served notice upon the Citizens' & Southern Bank, where plaintiff's funds were deposited, not to pay out moneys from said funds until further notice.

12. Plaintiff thereupon, to wit, on the 10th day of April, 1925, filed a petition with the United States Board of Tax Appeals requesting a review of the Commissioner's findings as to the fiscal year ended April 30, 1919. Said appeal was heard by said Board on June 18, 1925, and on April 16, 1926, decision was rendered to the effect that the so-called jeopardy assessment was not a final determination by the Commissioner of the taxpayer's liability, such as was necessary under the law to give said Board jurisdiction to review the Commissioner's action, so that the appeal was dismissed as to said fiscal year.

13. In order, therefore, to raise said lien and release said funds, plaintiff, on May 1, 1926, under duress and protest, delivered its check to C. E. Drew, chief office deputy of said collector, in the amount of $4,572.43, claimed to be due as follows:

| | | |
|---|---:|---:|
| Deficiency for fiscal year ended April 30, 1919 | | $11,096 70 |
| Interest thereon | | 314 39 |
| Total | | $11,411 09 |
| Less payment with tentative return | $3,500 00 | |
| Less balance of 1917 overpayment | 3,338 66 | 6,838 66 |
| Net amount claimed by collector as then due | | $ 4,572 43 |

All of said amounts were transmitted in the usual course of business by said collector to, and received by, the defendant, United States of America, and the defendant has ever since retained and now has the same.

14. Thereafter, to wit, on or about the 13th day of May, 1926, plaintiff filed with said collector for transmission to the Commissioner, and the same was so transmitted, a claim for refund of said payment of $11,096.70 tax and $314.39 interest upon the following grounds:

(a) That plaintiff and American Naval Stores Company were affiliated corporations, as defined in the Act of Congress approved February 24, 1919 (40 Stat. 1057) and the regulations of the Secretary of the Treasury promulgated by authority thereof, and were therefore entitled to make a consolidated return, wherefore all of said alleged tax and interest were erroneously collected.

(b) Assessment of $11,096.70 for fiscal year ended April 30, 1919, was made more than five years after the consolidated return for the calendar year 1918 was filed and thus, for 8 out of the 12 months included therein, overlaps a period for which assessment was barred by the Statute of Limitations (Revenue Act 1924, § 277 (a) (2), 26 USCA § 1057, note), so that two-thirds of the said assessment, or $7,397.80, was collected illegally irrespective of the existence of affiliation, and the same is true of the interest of $314.39 thereon demanded by and paid to the collector, making a total of $7,712.19 collected after the expiration of the limitation period.

15. The Commissioner of Internal Revenue, after due consideration, of said claim, rejected same in full and so notified plaintiff by letter dated October 14, 1926.

16. Plaintiff's separate taxable net income (i. e., when not consolidated with that of the American Naval Stores Company) was, for the 8 months ended December 31, 1918, $18,345.51; for the 4 months ended April 30, 1919, $8,805.02; and for the 12 months ended April 30, 1919, $27,150.53.

17. Plaintiff's statutory invested capital for all of said periods aforesaid and any part thereof, for purposes of determining its credits computed thereon, according to law and the regulations of the Treasury Department promulgated by authority thereof, was $30,233.75.

18. Plaintiff has at all times borne true allegiance to the government of the United States and has not in any way voluntarily aided, abetted, or given encouragement to rebellion against said government, or to any government that is or ever has been at war

with said United States; it is the sole and absolute owner of the claim herewith presented; it has made no transfer or assignment of said claim or of any part thereof; no action thereon, other than as herein set forth, has been taken before Congress or other departments of the government or in any other court other than the petition filed with this court; and no part of said claim has been refunded.

### Findings of Law.

1. The court is of the opinion that the relationship between the National Tank & Export Company and the American Naval Stores Company for the calendar year 1918 was not such as to justify a consolidated income tax return.

2. The court is of the opinion that the consolidated income tax return made by the National Tank & Export Company in conjunction with the American Naval Stores Company was such a return as to furnish the starting point for the statute of limitations against the National Tank & Export Company. This conclusion is more readily reached because of the tentative return made by such company when additional time was asked, during which extended time the consolidated return was made. The fact that this company was in error (if it were in error), as to its conclusion that the consolidated income tax return was proper would not serve to establish that the return was "false or fraudulent," and with intent to evade the tax.

Let a judgment be taken in accordance with the above findings.